Parker, C. J.,
delivered the opinion of the Court. We express no opinion, in this case, whether the damages found by the jury are excessive or not; because we are all of opinion that, for another cause suggested, a new trial ought to be granted.
We entertain no doubt of the authority of the Court to set aside a verdict on account of the largeness of the damages. It is an authority, however, which ought to be exercised with great caution and discretion; but whenever the Court is satisfied that there is no reasonable measure between the injury and the compensation, it is their duty to submit the cause to another jury. In cases of tort, it may be difficult to settle the just measure of damages. But still, if there be not a correcting power in the Court, great injustice may be done under the influence of the purest motives; for jurors are liable to have their passions excited on questions of personal liberty and right; and it is by no means interfering with their, proper authority, to give opportunity to a party to be heard before a second jury, when, from the interval of time, and other circumstances, a more cool and dispassionate investigation may be expected to take place, (a)
But, in the course of the charge to the jury in the present case, the judge dropped an expression which, although suggested in the form of a doubt, was calculated to impress the jury with a belief that the punishment was wholly unauthorized, and would of course induce them to increase the damages; for it would be reasonable to give greater damages, when the personal violence was wholly without excuse or justification, than when the offence consisted only in exceeding the bounds of moderation in punishing, where a right to punish existed.
* The doubt expressed was, whether the master of a vessel had lawful authority to inflict punishment by whipping for a past offence; such punishment not being necessary for the suppression of any actual mutiny or disorder, or for coercion to any particular act of duty. The right of the master to use force and personal violence, to quell insurrection, or to exact obedience to orders, or to regular duty, can never be questioned. Without such *332 power, every crew would be in a state of anarchy, and the lives and property of all concerned in continual jeopardy.
It was supposed at the trial that, although this power was undeniable, yet that it existed only from the necessity of the case; and that, the same necessity not existing when the crew were in a state of obedience, and the vessel in safety, this extreme right of punishing, without trial, and at the discretion of the injured party, ought not to be exercised — except by restraint of the offender, and such privations as might be effected on board a ship.
But, upon further reflection, I am of opinion, and the Court con curs with me, that there is no foundation, either in reason or authority, for this distinction. All the books on the subject speak of correction as within the authority of the master, and this term implies a preceding offence ; and no distinction is suggested, as to the kind of force to be used in punishing, whether the punishment be inflicted immediately on the commission of the offence, or after such interval as the prudence of the master may have allowed.
In subduing an insurrection or mutiny, any force requisite maybe used, and any weapon which the occasion may require ; because, in such case, the master acts on the defensive, and is bound by his duty, at all hazards, to reduce the crew to order and discipline. Where the offence is of a nature to require punishment, but not immediate violence, it is not only lawful, but may be expedient, to postpone the punishment; and then, if corporal infliction should be deemed proper, no deadly weapon should be used; for the very circumstance that the master has the power * to punish, shows that neither he, nor the vessel, is in immediate danger; and therefore care should be taken to avoid such blows as may put the life of the offender at hazard. Confinement, even in irons, may sometimes be resorted to as the best mode of punishment; but the master is not restricted to this, for, having authority to correct, he may adopt the mode most likely to prevent others from following a bad example. (1)
It has been said that tying up and whipping is ignominious, and ought not to be allowed. But it may be sometimes necessary, and it should be remembered that it can rarely take place without justifiable cause; and whenever it does, the consequence of the law is sure to overtake him who shall abuse his authority. The injury must necessarily take place in the presence of many witnesses, most of whom, from sympathy and fellowship, will be ready, at all times, to vindicate the cause of the. sufferer; and there never is *333 danger that a jury will be sparing of damages when a case of tyranny and cruelty shall come before them.
On the other hand, if restrictions and limits shall be previously appointed to the authority of the master, or the mode of exercising it, great danger will arise to the officers of the ship, who, being always the smallest party, may be exposed to hazards which will render the seafaring life, so essential to the world, too formidable for any to encounter.
It has been said, in argument, that to permit the use of personal violence, by way of punishment, after an offence has been committed, is to encourage vindictiveness and malice on the part of the master. But, on the other hand, to forbid any punishment except at the very instant the offence is committed, might be attended with consequences at least as serious; for it will then be inflicted in the heat of blood, and without any choice in the mode — so that life would often be put in hazard.
The security, and the only security which can be obtained, is the amenability of the master to the laws of his * country; for he may be prosecuted, both criminally and civilly. If it should appear that the intervening time has been used to inflame instead of moderating passion; and that the punishment was finally inflicted, either in kind or degree, to gratify a malicious or vindictive disposition rather than to subdue the temper of the offender, or to deter others from offending, retributive justice will apportion the penalty and the damages to the malignity of the motives.
These principles ought not to be questioned. The safety of lives, even the lives of the crew, depends essentially upon the unlimited authority of the master, in all cases of emergency. They commit themselves to the ocean, remote from all protection but that of Heaven, and are often among savage people, ready to take advantage of any want of subordination, to plunder and massacre. Nothing but undisputed power in the master will, at all times, prevent ruin to them all. In the mean time the laws of their country, although suspended, have not lost their force; and the same application of them, when the mariners shall return within their protection, will generally guard them from an abuse of power; and when they fail to do this, will be sure to avenge those who suffer by it. (a)

New trial granted.

 Rodwell vs. Osgood, 3 Pick. 379. — Clark vs. Binney, 2 Pick. 113. — Shuts vs Barrett, 7 Pick. 82. — Reed vs. Davis & Al. 4 Pick 217.

 See Abbott on Shipping, part 2, c. 4, § 4, and the authorities there cited. 332

 See note to Abbott on Shipping, by Mr. Justice Story, p. 137, n. 1.